Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
1900 Camden Avenue, Suite 101
San Jose, California 95124
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: service@moorelawfirm.com
        tanya@moorelawfirm.com

Attorney for Plaintiff
Jose Trujillo

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO,<br><br>             Plaintiff,<br><br>    vs.<br><br>H&S LBSE INC dba 7-ELEVEN #22736G;<br>7-ELEVEN, INC.,<br><br>             Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER THE AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1.     This is a civil rights action by plaintiff JOSE TRUJILLO ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> 7-Eleven #22736G
> 603A Pacheco Boulevard
> Los Banos, California 93635
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against H&S LBSE INC dba 7-ELEVEN #22736G and 7-ELEVEN, INC. (hereinafter collectively referred to as "Defendants"), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

## II.   JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.   All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.   Plaintiff is substantially limited in his ability to walk, and uses a wheelchair or cane for mobility. In addition, Plaintiff's hearing is substantially limited. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.   The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.   On or about January 9, 2026 and February 6, 2026, Plaintiff was using his wheelchair and visited the Facility in order to purchase gasoline and refreshments. On such dates, Plaintiff encountered the following barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility:

    a)   On both occasions, Plaintiff could not locate a fuel pump that was designated accessible or that appeared to be wheelchair-accessible, so he

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

parked at a non-accessible fuel pump. He sounded the horn several times upon his arrival to request fueling assistance, to no avail. After unloading from his vehicle into his wheelchair, Plaintiff attempted to alert the gas station attendants using the intercom button provided near the fuel pump, which did not appear to be functioning and was not successful in summoning assistance. As a result, on both dates, Plaintiff had to go into the store to pay for his gas.

b) On both dates, the path of travel from the fuel pump where Plaintiff parked his vehicle to the store entrance was uneven, with excessive slopes and changes in level that made it difficult for him to maneuver his wheelchair. On January 9, 2026, when Plaintiff was returning to his vehicle after leaving the store, another vehicle was parked at the fuel pump which, combined with the positioning of garbage cans at the fuel pump island, obstructed Plaintiff's route. Plaintiff had to take a different, longer route to return to his vehicle, which route was even more uneven with deteriorated asphalt that was difficult for Plaintiff to maneuver his wheelchair over.

c) On both dates, there was an excessive height change at the store entry threshold, and the thick carpeted floor mat inside the doorway also created changes in level within the required maneuvering clearances at the entrance. As a result, it was difficult for Plaintiff to maneuver his wheelchair through the store entrance.

d) On January 9, 2026, Plaintiff needed to use the restroom, but did not see one available that he could access. The hallway off the retail area, which Plaintiff later learned comprises the route of travel to the restroom, was obstructed by stored items such that Plaintiff could not have maneuvered his wheelchair to the restroom.

e) On February 6, 2026, after learning that the restroom was available for

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

customer use and needing to use the restroom again while visiting the Facility, Plaintiff asked Facility staff if they would move the obstructions out of the way so that he could use the restroom. They did so, and Plaintiff was able to enter the restroom. However, he was not able to transfer to the toilet because the room was too small and there was a floor drain which created excessive change in level near the toilet, which prevented Plaintiff from positioning his wheelchair for transfer.

f)   On February 6, 2026, Plaintiff washed his hands at the sink in the restroom but it was difficult for him to approach the sink as it was too close to the side wall and there was insufficient clear space in the room. Additionally, it was difficult for Plaintiff to reach the soap dispenser and hand dryer as they were positioned beyond his reach.

g)   On February 6, 2026, the mirror in the restroom was mounted too high for Plaintiff to see himself from a wheelchair-seated position.

h)   During both visits, the point-of-sale device at the transaction counter was positioned too high and required an obstructed reach over the counter surface and the merchandise displays on top of the counter. As a result, on January 9, 2026, it was difficult for Plaintiff to reach the point-of-sale device in order to pay for his purchase. On February 6, 2026, Plaintiff had his son pay for the purchase instead as it was easier.

i)   On both dates, narrow merchandise aisles that were obstructed by boxes and merchandise displays in various locations throughout the store made it difficult for Plaintiff to navigate the store in his wheelchair.

j)   On both dates, the hot food display was too high for Plaintiff to see from a wheelchair-seated position, so he could not evaluate the food to see if it looked fresh or appealing.

k)   On both dates, the scratcher lottery ticket display, which was located within the upper transaction counter surface, was not visible from

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

Plaintiff's wheelchair-seated position so he could not easily view the selection of tickets offered.

l) The ATM was located in a corner of the store, with the approach to it obstructed by stored merchandise. As a result, on January 9, 2026 despite wanting to use the ATM, Plaintiff could not reach the ATM controls from his wheelchair and could not use it.

11. In addition to the barriers described above, it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access. Specifically, Plaintiff is aware of the following barriers which exist at the Facility and relate to his disabilities:

a) The route of travel from the fuel pumps to the store entrance contains excessive cross slopes, height changes, and openings in the walking surface, and may require travelling behind parked vehicles other than one's own.

b) The walkway serving the store entrance, which is part of the routes of travel from the public sidewalk, fuel pumps, and designated accessible parking to the store entrance, contains excessive cross slopes, height changes, and openings in the walking surface.

c) The designated accessible parking and curb ramp are inaccessible. The parking stall and adjacent access aisle contain excessively wide and deep gaps in the walking surface, excessive slopes and changes in level. Additionally, there is a bollard located within the access aisle which restricts the length of the access aisle to less than the minimum length required.

d) The parking area provides over 25 total marked parking stalls, yet only one designated accessible parking stall is provided. Accordingly, there is an insufficient number of accessible parking based on the total number of parking stalls in the lot.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

e) Proper tow-away signage is not provided at each driveway entrance.

f) The operable parts of the "push for service" call boxes in the fuel pump area are positioned too high, and the required clear ground space adjacent to them is not provided. Additionally, the call boxes and the assistance buttons on the fuel pumps are not maintained in a functional condition.

g) The required clear ground space adjacent to the emergency shut-off switch is not provided.

h) The required maneuvering clearances at the exterior side of the store entrance contain excessive changes in level and openings in the walking surface.

i) The store entrance doors require excessive force to open and/or close too quickly; neither leaf is properly maintained as accessible.

j) The transaction counter surface is too high and the point-of-sale devices, touch screens, change trays, and lottery ticket scanner are positioned with their operable parts requiring an obstructed reach over the counter surface, which is too high of an obstruction.

k) The scratcher lottery ticket display located within the transaction counter surface is not visible from a wheelchair-seated position.

l) Portions of the merchandise aisles lack proper clear width.

m) Some of the merchandise aisles lack proper turning clearances around the display shelving and/or stacked merchandise at the ends of the aisles.

n) The floor sink located within the required clear width of one merchandise aisle creates excessive height changes and openings in the walking surface.

o) The operable parts of the hot food display cases are positioned beyond allowable reach ranges and the hot food items are not visible from a wheelchair-seated position.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

p) The self-serve condiment counter surface is too high, the condiments are positioned beyond allowable reach ranges, and the condiments are not visible from a wheelchair-seated position.

q) The self-serve hot food counter surface is too high.

r) The self-serve soft drink/Slurpee counter surface is too high.

s) The customer-use food and beverage items at the hot food and beverage counters (e.g. cups, lids, straws, popcorn, napkins, stir sticks, coffee cup lids), operable parts of the self-serve dispensers (e.g. soda, Slurpees, nacho cheese, chili), and operable parts of the microwave are positioned too high and/or beyond obstructed reach ranges.

t) The lottery ticket kiosk does not have each type of lottery ticket offered available within proper reach ranges.

u) The restroom, which is open to the public, is not accessible. The entrance lacks proper unobstructed and level maneuvering clearances at the interior and exterior sides; the door lacks a 10" uninterrupted smooth surface on the bottom of the push side; the floor surfaces within the turning space and required clear floor spaces in the restroom contain excessive slopes; the lavatory does not provide the required knee clearance; the lavatory is not properly positioned with respect to the side wall; the plumbing beneath the lavatory is not properly insulated or otherwise configured to protect against contact; the required clearances and maneuvering space at the toilet are not provided; the side and rear grab bars are improperly configured and/or positioned and the toilet paper dispenser obstructs the required clear space below the grab bar; the operable parts of the hand dryer, soap dispenser, and toilet seat cover dispensers are positioned beyond accessible reach ranges; and the bottom edge of the mirror is positioned too high.

//

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

12.     Plaintiff visits the area where the Facility is located monthly and has visited the Facility many times in the past, including before he became disabled. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

## VI.    FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

30.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

<u>Failure to Maintain Accessible Features</u>

31.    Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

32.    Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

33.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## VII.    SECOND CLAIM

### Unruh Act

34.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

35.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

36.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

37.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

38.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

39. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

40. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

41. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

## Denial of Full and Equal Access to Public Facilities

42. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

43. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

44. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

45. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

46. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

3.    Attorneys' fees, litigation expenses, and costs of suit.[2]

4.    Interest at the legal rate from the date of the filing of this action.

5.    For such other and further relief as the Court deems proper.

Dated: 02/24/2026                    MOORE LAW FIRM, P.C.


                           _____/s/ Tanya E. Moore_____
                           Tanya E. Moore
                           Attorney for Plaintiff
                           Jose Trujillo

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Trujillo v. H&S LBSE Inc, et al.*
Complaint

# VERIFICATION

I, JOSE TRUJILLO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:   02/24/2026                          /s/ Jose Trujillo
                                             Jose Trujillo


I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
                                             Attorney for Plaintiff,
                                             JOSE TRUJILLO